Moneesh K. Bakshi
RASH & BAKSHI
45 Rockefeller Plaza
Suite 2000
New York, New York 10001
Telephone:     (646) 583-1625
Facsimile:      (843) 818-5331

*Proposed Counsel to the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                          Chapter 11
                                                                                     Case No. 14-41264 (CEC)

John DiNaso & Sons, Inc

                                              Debtor

-----------------------------------------------------------x

## DEBTOR'S OPPOSITION TO MOTION TO LIFT AUTOMATIC STAY AND TO CONVERT CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

**TO THE HONORABLE JUDGE CARLA E. CRAIG, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; CREDITORS; AND, OTHER INTERESTED PARTIES.**

John DiNaso & Sons, Inc. ("Debtor"), Debtor in the above referenced matter, hereby opposes the Motion to Lift the Automatic Stay and Convert this case to a case under Chapter 7 of the Bankruptcy Code as follows:

INTRODUCTION

1.     On 19 March 2014 (the "Petition Date"), the Debtor filed its Chapter 11 Petition with the United States Bankruptcy Court for the Eastern District of New York (the "Court"). The Debtor proposes to continue to operate its business and manage its

property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.  The Debtor operates a building supply business on Staten Island, New York. It serves builders and contracts on Staten Island and nearby areas of New Jersey.

3.  The Debtor commenced operations in 1976. During the period of 1976 through 2010, the Debtor's operations flourished and it formed affiliated corporation and opened additional locations in New Jersey. Prior to 2011, the Debtor had maintained, *inter alia,* a term and revolving credit agreement with Santander Bank (as successor to Staten Island Savings Bank and Sovereign Bank) which advanced the Debtor operating and other funds based upon an agreed to Borrowing Base Certificate that limited the amount of advances on the revolving credit agreement to the value of certain of the Debtor's assets. On November 14, 2011, the Debtor and Sovereign Bank (as predicator to Santander Bank) entered into a Forbearance Agreement that, *inter alia*, established that the amount that had advanced under the revolving credit agreement exceeded the amount permitted under the Borrowing Base Certificate by $872,430.38 but provided the bank would forebear from taking any foreclosure or other action for approximately four months in order to permit the Debtor to effect a turnaround plan.  In addition to the banks agreement to forebear taking any foreclosure or other legal action, the Forbearance Agreement stipulated that no further overadvances would be permitted, and provided for a $5,000.00 penalty for each inadvertent overallowance. Once the Debtor entered into the Forbearance Agreement and all advances on the revolving credit agreement cease, the Debtor did not, and could

not generate, funds necessary to meet its obligations to Santander Bank, pay its ongoing trade debt obligations, pay its mounting sales tax obligations, and have operating capital sufficient to replenish inventory. Debtor's operations were further impacted by Super Storm Sandy, which caused significant inventory loss, and the general economic downturn.

4. The capping of the advances under to the revolving credit agreement as a condition of the Forbearance Agreement with Santander Bank, resulting in the Debtor's being unable to generate income sufficient to meet it on-going obligation to the Bank, other lenders and trade vendors, cover administrative expenses, purchase inventory for resell, and maintain and timely meet its payment obligations to its trained and dedicated staff of several years.

5. Debtor's lack of operating capital resulted in several long-term employees leaving the Company for a better opportunity, which is the contributing factor in the inability of the Company to obtain and generate information in a manner sufficient to meet the filing deadlines set by the Court and thereby causing Counsel and others outside of the Company, although working diligently meet deadlines, to seek information from an unfamiliar source without guidance of its location (to paraphrase, at time analogous to seeking the preverbal needle in a paper stack).

6. Debtor has been in extensive negotiation with a DIP Financier to raise the necessary capital to offer satisfaction to the secured and unsecured creditors in this case in order to reorganize its business and continue to serve its customers on Staten Island, NY and in New Jersey.

7. Debtor's effectors to raise DIP financing has been successful and a DIP Financier has submitted a term sheet for the Debtor's review that it will utilize in an

attempt to negotiate a settlement with the creditors in this case and permit the Debtor to file a confirmable Plan of Reorganization with the Court. Debtor is also in negotiation with the DIP Financier and others for Accounts Receivable and Inventory factoring for operating capital.

## SANTANDER BANK

8. Santander Bank, in its Motion to Lift Stay and convert to this case to a case under Chapter 7 of the Bankruptcy Code, limits its Motion to Lift Stay to Foreclose on the Debtor's property on Staten Island, New York, for which it states it has a First Mortgage on all on the lots on Industrial Loop owned by the Debtor and DiNaso Staten Island LLC.

9. Santander Bank alleges that it is not protected in its collateral for its First Mortgage on the property, which it states the amount due, including accelerated principal, interest and fees, is $4,134,615.11while the appraised value is only $3,950,000.00.

10. While Santander Bank argues that there are other collateral it could pursue, it is moving to lift the automatic stay on the property at Industrial Loop on Staten Island so it could prosecute a Foreclosure action in the Circuit Court and upon Foreclosure, apply the proceeds to the its outstanding balance.

11. Santander argues it is under secured in that its appraisal is $3,950,000, while the total due is $4,124,615. However, Equity Valuation Group appraised the Staten Island property at its fair value of $4,970,000. Therefore, limiting the argument to the bank's own reasoning that is not adequately protected, and hence, the Automatic Stay is due to be lifted, is not persuasive in that its appraisal, made the basis for its argument, is more than $1MM less than the fair value. Applying the fair value appraisal provided by the Equity Valuation Group, the fair value of the Debtor's property on Industrial Loop on

Staten Island, and the Debtor's equity on Santander's First Mortgage, is approximately $845,000 more than Santander's stated amount due.

12. Santander further argues that this case should be converted to a case under Chapter 7 due to, *inter alia,* the Debtor's failure to make post-petition payment on the debt due Santander; failure to make a cash collateral and other motions; failure to file certain schedules; and, failure to satisfy the Chapter 11 reporting requirement.

13. While the Debtor may have been untimely in filing certain motions and reporting timely its results of operations to the US Trustee, the Debtor filed several schedule and statements over the last few days and believes it is current with the Petition filings and has filed a Motion for Leave to File Schedules and Statement Out of Time and Deem the Timely Filed for due cause shown. In short, after Santander Bank denied further extension of the Company's revolving loans, the Debtor lacked the funding necessary to retain experienced personnel and the current personnel do not have the experience to perform the tasks necessary to facilitate the preparation of required Schedules and Statements, or the training to lock the information necessary for others to file the Schedules and Statements.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

14. Counsel for the Official Committee of Unsecured Creditors move this Court to convert to one under Chapter 7 of the Bankruptcy Code allegedly for the benefit of the unsecured creditors.

15. If the case were converted, it would not benefit the unsecured creditors because Santander has claimed over $13 Million is due to Santander Bank from the debtor and its affiliates including John DiNaso, Sr. and William Epp.

16. Under Chapter 7, it is not likely that the unsecured creditors would receive any payments towards their claim.

17. The unsecured creditors would be better protected under a restructuring of the debtor to generate revenue and structure payments to the unsecured creditors. Allowing the case to continue under Chapter 11 would be in the best interests of the unsecured creditors, Victory Bank, and a local business that has continuing good will in the community.

18. While the Debtor may have been untimely in filing certain motions and reporting timely its results of operations to the US Trustee, the Debtor filed several schedule and statements over the last few days and believes it is current with the Petition filings and has filed a Motion for Leave to File Schedules and Statement Out of Time and Deem the Timely Filed for due cause shown. In short, after Santander Bank denied further extension of the Company's revolving loans, the Debtor lacked the funding necessary to retain experienced personnel and the current personnel do not have the experience to perform the tasks necessary to facilitate the preparation of required Schedules and Statements, or the training to lock the information necessary for others to file the Schedules and Statements.

19. Debtor has been in consultation with a restructuring expert that would review the Company with the intent to bring it solvent within as short a period of time as possible, utilizing DIP financing, factoring, and liquidation of unprofitable assets. This would permit the Company to achieve viability that it lost when Santander Bank stopped funding the revolving and term loans. The Debtor would certainly file a motion to the court to retain any restructuring professional.

IN CONCLUSION, John DiNaso & Sons, Inc. has been a viable company for several years, grossing more than $80 million no more six years ago. Santander Bank stopped that when they pulled them credit line. If the Court grants Santander's motion, it will strike to the heart of the Company and, in essence, erase more than $2 million of Unsecured Creditor value without compensation and provide all the benefits to the one creditor that the most protected. In that the Company has been in preliminary discussion with a restructuring entity for the purposes of drafting a proposed equitable Restructuring Plan that would include all creditors, and not destroy a thirty year local Staten Island business that still has viability and tremendous good will for the benefit of one secured creditor. Granting Santander's Motion to Lift the Stay for purposes of foreclosing on property, the value of which is unknown, will prevent that, as will granting the creditors and the Trustee's motions to convert the case to a case under Chapter 7.

This Debtor has proven itself to be a viable entity that generates income for the Company and the community it serves. It can be viable again without excluding unsecured and under secured creditors for the benefit of one super secured creditor.

Respectfully submitted this the 27th day of May 2014.

/s/ Moneesh Bakshi
Moneesh Bakshi